09 CV 462

David B. Chenkin
Jantra Van Roy
Robert Guttmann
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
*Attorneys for Interpleader Plaintiff*
 *U.S. Bank, National Association,*
 *as successor to Wachovia Bank, National Association*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TO WACHOVIA BANK, NATIONAL ASSOCIATION.<br><br>                                    Interpleader Plaintiff,<br><br>- against -<br><br>BARCLAYS BANK PLC and MORGAN STANLEY CAPITAL SERVICES, INC.,<br><br>                                    Interpleader Defendants. | Case No. 09_____( )<br><br>**INTERPLEADER**<br>**COMPLAINT** |

U.S. Bank National Association, as successor to Wachovia Bank, National Association (the "Trustee") solely in its capacity as trustee under an indenture dated September 29, 2005 (the "Indenture"), between and among itself, Tourmaline CDO I Ltd. ("Issuer") and Tourmaline CDO I Corp. as co-issuer, by its attorneys, Zeichner Ellman & Krause LLP, as and for its Interpleader Complaint, alleges:

## INTRODUCTION

1. This is an interpleader action brought in accordance with Rule 22 of the Federal Rules of Civil Procedure for the purpose of obtaining adjudication of the respective rights of the Interpleader Defendants with respect to the priority of distributions to be made by the Trustee under the Indenture. The Trustee faces competing claims from the Interpleader Defendants to priority of distribution and cannot determine, without hazard to itself, how to proceed.

## PARTIES

2. U.S. Bank National Association, as successor to Wachovia Bank, National Association, in its capacity as Trustee under the Indenture, is a national banking association with its main office in Ohio.

3. Interpleader Defendant Barclays Bank PLC ("Barclays", or the "Liquidity Provider") is, upon information and belief, a public limited company registered in England and Wales with its principal place of business in London, England and is sued herein in its capacity as the Liquidity Provider and sole holder of all Class I Notes and as such, is the Majority of the Controlling Class as defined under the Indenture.

4. Interpleader Defendant Morgan Stanley Capital Services, Inc. ("Morgan Stanley" or the "Hedge Counterparty") is, upon information and belief, incorporated under the laws of the State of Delaware, with its principal place of business in

New York, New York, and is sued herein in its capacity as the Hedge Counterparty to a certain Initial Unfunded CDS Agreement, as defined below.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(3) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest or costs, Interpleader Plaintiff is a citizen of a State and Interpleader Defendants are a citizen of a different State and a subject of a foreign state, respectively.

6.  Venue is proper in this district pursuant to 28 U.S.C. §§1391(a), (c) and (d).

## BACKGROUND

7.  Morgan Stanley, as Party A, and Issuer, as Party B, are parties to a certain 1992 ISDA Master Agreement, dated as of September 29, 2005 (together with the related Schedule, Confirmation and Credit Support Annex, the "Initial Unfunded CDS Agreement").

8.  Barclays is the Liquidity Provider pursuant to a Liquidity Agreement by and between Barclays and the Issuer. As such, Barclays is the sole holder of Class I Notes issued under the Indenture and is thus the Majority of the Controlling Class under the Indenture.

9.  Section 5.4(a)(ii) of the Indenture provides, in pertinent part:

3

Section 5.4 <u>Remedies.</u>

(a)     If an Event of Default shall have occurred and be continuing, and the Notes have been declared due and payable and such declaration and its consequences have not been rescinded and annulled, or at any time after the Stated Maturity Date, the Co-Issuers agree that the Trustee may, and shall, upon written direction by a Majority of the Controlling Class, to the extent permitted by applicable law exercise one or more of the following rights, privileges and remedies:

...

(ii)     ...[I]n the case of Synthetic Assets entered into pursuant to a Master Agreement, designate an "Early Termination Date" under (and as defined in) such Master Agreement to the extent that provision is made in such Master Agreement for the Issuer to have the right so to designate an "Early Termination Date".

10.     Interpleader Defendants disagree as to whether, as of January 9, 2009, the Issuer had the right to so designate an "Early Termination Date" under the Initial Unfunded CDS Agreement, which is a Master Agreement within the meaning of Section 5.4 of the Indenture. The Trustee cannot determine without hazard to itself which of the competing interpretations of the Initial Unfunded CDS Agreement is correct.

11.     By letters dated April 4, 2008, the Majority of the Controlling Class notified the Trustee and the Trustee notified the Noteholders that an Event of Default under Section 5.1(d) of the Indenture had occurred and was continuing (the "Event of Default Notices").

4

12. By letter dated April 8, 2008, the Majority of the Controlling Class directed the Trustee to declare the Notes (as defined by the Indenture) due and payable (the "Acceleration Direction").

13. By letter dated April 8, 2008, at the direction of the Majority of the Controlling Class, the Trustee provided notice of the acceleration of the Secured Notes and the termination of the Reinvestment Period (the "Acceleration Notice").

14. Neither the Acceleration Direction nor the Acceleration Notice has been revoked.

15. By letter dated January 9, 2009 (the "Direction Letter"), the Liquidity Provider, in its capacity as Majority of the Controlling Class, pursuant to Article V of the Indenture, directed the Trustee to provide Morgan Stanley, as Hedge Counterparty, notice of the occurrence of an Additional Termination Event as defined under the Schedule and to designate an Early Termination Date.

16. In accordance with the Direction Letter, on January 9, 2009 the Trustee delivered to Morgan Stanley, as Hedge Counterparty, for and on behalf of the Issuer, notice of the Additional Termination Event and designated an Early Termination Date (the "Early Termination Notice") of January 9, 2009.

17. By letter dated January 12, 2009 Morgan Stanley informed the Trustee and others that it viewed issuance of the Early Termination Notice to constitute a repudiation and breach of the Initial Unfunded CDS Agreement, and advised that if the

Early Termination Notice "is not rescinded by 5:00 p.m. EST on January 13, 2009, we will declare the Issuer in breach and hold it accountable for all damages suffered as a consequence of such breach. By our preliminary estimate, those damages are approximately $250,000,000 to $300,000,000."

18. The question of whether the Initial Unfunded CDS Agreement (a Hedge Agreement within the meaning of the Indenture) is terminated directly impacts the payments to be made under the Indenture. In this regard, Section 11.1(a)(i) of the Indenture provides, in pertinent part:

> (i) <u>Collateral Interest Collections</u>. Subject to subsection 11.3, on each Payment Date, Collateral Interest Collections (including any amount released in the form of Cash from the Class I Reserve Account on or prior to such Payment Date as a Remaining Minimum Draw Amount) will be distributed in the following order of priority:
>
>> (1) to pay, in the following order: (a) taxes and filing fees and registration fees (including, without limitation, annual return fees) payable by the Co-Issuers, if any …
>>
>> (2) to pay the Senior Collateral Management Fee with respect to such Payment Date …
>>
>> (3) to pay to the Liquidity Provider, the Class I Facility Fee …
>>
>> (4) to, pro rata (1) pay to any Hedge Counterparty, amounts due to such Hedge Counterparty under any Hedge Agreement, <u>excluding any termination payment payable to a Hedge Counterparty of the type described in Section 11.1(a)(ii)(14)</u>; (2) pay Periodic Interest (including any Defaulted Interest thereon and any interest on such Defaulted Interest) on, and Outstanding principal of, any Class I-A Notes issued for the purpose of making Unfunded CDS Interest

6

> Payments or to the extent representing the portion of any draw constituting a Minimum Draw Excess Amount (applied to any such Class I-A Notes in their order of issuance, beginning with those having the earliest issuance date); (3) deposit funds to the Class I Reserve Account in the amount of any withdrawals therefrom to pay Unfunded CDS Interest Payments, to the extent not returned to the Class I Reserve Account on a prior Payment Date; (4) (A) *first*, pay to any Unfunded CDS Counterparty any Unfunded CDS Interest Shortfall in respect of the related Due Period and not previously paid when due from Collateral Interest Collections, the Class I Reserve Account or a draw under the Liquidity Agreement (which if such payments are due and payable to two or more counterparties will be paid in the order in which the counterparties notified the Trustee such amounts were due and payable); and (B) *second*, pay the amounts described in Section 11.1(a)(ii)(1)(A) in the same manner and order of priority (but only to the extent that such amounts would not be or are not reduced to zero by the application of Collateral Principal Collections provided for in Section 11.1(a)(ii)(1)(A)); (5) pay Periodic Interest on the Class I-A Notes (other than that referred to in subclause (2) above), the Class I-B Notes and the Class I-C Notes (including any Defaulted Interest on the Class I Notes and any interest on such Defaulted Interest); and (6) pay to Barclays in its capacity as the Liquidity Provider the Makewhole Premium, if any;
>
> . . .

(emphasis added.)

19. The Trustee has repeatedly requested that the Interpleader Defendants resolve their differences between themselves, either by agreement or through legal action, but the Interpleader Defendants have refused to accede to the Trustee's requests.

20. Instead, the Trustee continues to find itself in the middle of a dispute between the Interpleader Defendants. Each continues to assert aggressively that its interpretation of the Initial Unfunded CDS Agreement is correct. Each party has informed the Trustee that, if the Trustee acts contrary to its interpretation of the Initial Unfunded CDS Agreement, it will seek damages against the Trustee in an amount not less than $250 million.

21. The Trustee therefore faces inconsistent claims resulting from Morgan Stanley and Barclay's conflicting interpretations of the applicable documents, and cannot determine, without hazard to itself, how it should proceed.

22. This action is not brought by collusion with either of the Interpleader Defendants.

## **PLEA FOR RELIEF**

**WHEREFORE**, Interpleader Plaintiff demands judgment:

1. That Interpleader Defendants and each of them be restrained by injunction from commencing or prosecuting any action or proceeding against the Trustee in relation to the priority of payments to be made pursuant to the Indenture;

2. That Interpleader Defendants be required to interplead together concerning their respective claims to priority of payment under the Indenture;

3.  That the Trustee, upon final judgment determining the rights of the Interpleader Defendants, cause payments to be made under the Indenture in accordance with the Court's direction;

4.  That pending such final judgment, no payments be made to either Interpleader Defendant under the Indenture unless so ordered by the Court;

5.  That the Trustee be awarded its costs and attorneys' fees incurred in prosecuting this action; and

6.  That the Trustee have such other and further relief as the court may deem just, proper and equitable.

Dated:  New York, New York
        January 16, 2009

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
David B. Chenkin
Jantra Van Roy
Robert Guttmann
*Attorneys for Interpleader Plaintiff*
*U.S. Bank, National Association, as successor to Wachovia Bank, National Association*
575 Lexington Avenue
New York, New York 10022
(212) 223-0400